* Parker, C. J.,
delivered the opinion of the Court.
We must understand that the merchandise was sent on to be sold, without any special instructions from the plaintiff, as to the disposition of the proceeds, and must gather the understanding and intention of the parties, as well as we can, from their acts and doings, relative to the subject matter of the contract between them.
The general rule laid down in the books is, that when goods are delivered to a factor, to be sold and disposed of for his principal, the law implies a promise on the part of the factor that he will render an account of them, whenever called upon by the principal; and if he refuses to account, he is liable to an action of assumpsit for the breach of his implied promise. It seems to have been formerly doubted, whether any action but account would lie against a factor; and afterwards it was thought that an express promise to account was necessary to maintain assumpsit. But the doctrine now settled is, that the undertaking to act as bailiff is an undertaking to account; and Lord Holt, in the case of Wilkin vs. Wilkin, 1 Salk. 9, referred to by the plaintiff’s counsel, says, wherever one acts as bailiff, he promises to render an account. Although, in Comyns on Contracts, 261, the inference from this case is made to be, that the factor is liable only on demand, or on refusal to pay money, yet if the general principle adopted by Holt is right, that the mere acting as bailiff is promising to account, it would not seem that a demand was, in all cases, necessary to enable the principal to maintain his action. Indeed such a limitation of the liability of a factor would be exceedingly inconvenient, and tend to the embarrassment of trade. For if a merchant who sends his goods to a foreign country to be sold, can have no right to call for his money, the proceeds of his goods, until he has sent abroad to make a demand, the risk of loss from the failure of factors would be considerably increased, and the disposition to trust them proportionably impaired. [ * 149 ] * Generally the consignor of goods accompanies his consignment with directions how to apply the proceeds ; either to pay them over to a third person ; or to remit in bills, or in merchandise, or in specie; or to hold them to answer his future orders; and in these cases there can be no difficulty. For the factor cannot be liable until he has actually or impliedly broken his orders. I say impliedly, for if the factor should become bankrupt *121 or insolvent, with the goods of the principal or their proceeds in nis hands, so that he is disabled from remitting them, or otherwise appropriating them according to the instructions of the principal, there seems to be no reason why an action would not immediately lie against him; by analogy to the common law principle, that when a duty is to arise upon a demand, and the party liable has disabled himself from performing, the necessity of a demand ceases. And if this were not so, creditors here, who could not for a long time cause a demand to be made, would have no opportunity of securing themselves out of the effects of the factor in this country; while creditors of a different description, but not more meritorious, would meet with no impediment in securing their debts.
The practice here has conformed to this principle; for many instances are known to have occurred, of actions brought and sustained against factors in foreign countries, although no demand had been previously made upon them to render an account. And it is probably upon this ground, if at all, that a principal may prove his claim against his factor, under a commission of bankruptcy in England, although no demand had been made upon him; so that the debt was contingent according to the general liability of factors. 3 D. E. 549.
It is also the duty of factors to account to their principals in a reasonable time, without any demand, in cases where a demand would be impracticable or highly inconvenient; so that a factor abroad, who should receive goods to sell, without special directions as to the mode of remittance, * would be held, according to [ * 150 ] the course of business, to give his principal information of his progress in the transaction ; and if he should neglect unreasonably to forward his account to his employer, this negligence would be a breach of his contract, and subject him to an action.
So if he should render an untrue account, even without any intention of fraud, claiming greater credit than he was entitled to, so that the balance shown was not true, we conceive the principal would have a right of action, without a demand. For he would not be obliged to submit to such charges as the factor should choose to make, or to wait, perhaps at the risk of his debt, until his agent should voluntarily correct his account, and acknowledge a just balance.
But if the factor should receive and sell the goods, without any special orders as to remittance, upon an understanding, express or implied, that he is to hold the proceeds to the order of his principal; and he does nothing in violation of those orders, or to disable himself from complying with them when they shall be received; and transmits a true account of sales, m a reasonable time, according to the course of business, and is ready to remit or answer droughts *122 upon him; we think that no action will lie against him for the bal anee in his hands. For his contract is to sell and render an account, and he ought not to be held to remit at his own risk; and he cannot remit at the risk of his principal, unless in compliance with instructions.
It was urged in argument that, as the defendants had stated an account and acknowledged a balance, they were indebted for that balance, and that a right of action immediately accrued without demand, as in other cases of admitted debt.
It may be so, where there is nothing in the case to control the legal presumption. But if the course of business between the parties, or any evidence accompanying the account, shows a contrary implication, the presumption would fail. [ * 151 ] * In the case before us, the referees state that, when the account was sent on, which acknowledges the balance, it was accompanied by a letter from the defendants, in which they state that they hold the balance for the order of the plaintiff. This declaration is repeated in the following month ; and it appears by the account stated by the referees, that all the proceeds, except the balance acknowledged, had been paid by droughts from the plaintiff. These facts, with nothing of a contrary complexion, go far to show that the consignments were accepted with an understanding that the proceeds were not to be remitted without orders from the con signor
The case in this view seems to be at least as strong as that cited from 10 Johns. 285, in which it was decided that the consignee was not liable in the action, because he had committed no breach of trust or duty. It appeared in that case to be the usage for the consignor to direct the mode of remittance ; and it probably is the general practice every where. Such practice, together with the conduct of the defendants in the case before us, may justify the conclusion that this consignment was made and accepted conformably to this practice.
But this is a fact to be stated by the referees, and not by the Court. If they determine, from the evidence in the case, that the understanding of the parties was, that the consignor was to direct the remittance, to draw for the proceeds, or otherwise appropriate them, then the defendants were not liable to the suit; and of course not to the costs, unless they were negligent in transmitting their account, or upon another ground they rendered themselves liable.
It has been stated, as one of the grounds of the liability of a factor, that he should have transmitted a false account, or one misrepresenting the balance in his hands. In the account transmitted by the defendants, the balance stated is little more than half the amoun *123 found by the referees to be due. Prima facie, this shows a wrong statement * of account, by which the plaintiff [ * 152 ] was not bound to abide. If he had drawn for a larger sum, his bill might have been protested; if he had drawn for the balance as stated, it might have been an admission that the balance was true. He had therefore a right to sue, if it should turn out that there was a misstatement of the account. On the other hand, if it shall appear that the account was correct, and that the referees have increased the balance against the defendants improperly, or from considerations of supposed equity, contrary to their legal rights, the eventual balance found would not affect their liability when the suit was brought.
A large debt of one Lethbridge was lost in consequence of his failure. The referees determined that the loss should fall upon the plaintiff, the defendants having been guilty of no negligence. But they had charged commissions on the amount of the sales to Lethbridge, which the referees disallowed. Was it right for the defendants to charge commissions on this sale, the fruits of which were lost? This must depend upon the usage among merchants. If such commissions are not usually charged, it was improper for the defendants to charge them, and the balance represented by them was not the true balance. If, on the other hand, it is considered proper among merchants, and is usual to charge a commission in such cases, the account is right in that particular.
It appears also that another sum, debited to the defendants, was not credited in the account rendered by them. If an account of this was rendered before the suit was commenced, and in a reasonable time after the money was received, the defendants are in no fault on account of this sum. But at present it appears that the sum remained in their hands unacknowledged, when the suit was commenced. This matter may also admit of explanation.
As, then, the question of costs is seen to depend upon facts which are not ascertained by the report of the referees, we conclude to recommit the report to them, with *di- [ * 153 ] rections to consider and determine, 1. Whether, from the correspondence between the parties, the course of business between them, or from any other evidence in the case, it appears that the consignments were made and received, under an expectation or understanding that the plaintiff was to draw for the proceeds, or otherwise to direct the remittance. 2. Whether the account rendered of the sales, and of the balance, were true, according to the defendants’ rights as factors, agreeably to the usage of commission merchants. 3. Whether the defendants, within a reasonable *124 time after the receipt of the proceeds, rendered an account thereof to the plaintiff. And if they find all these points in the affirmative, they will not charge the defendants with costs; otherwise they will.