## DAY *vs.* PRESKETT.

[BILL IN EQUITY FOR REFORMATION OF TITLE-BOND, AND SPECIFIC PERFORMANCE OF CONTRACT FOR SALE OF LAND.]

1. *Vendor's lien, and assignment thereof.*—A vendor's lien for the unpaid purchase-money of land, which is but an incident to the debt, passes to an assignee of the purchaser's note, in the absence of a stipulation to the contrary; but, if the vendor exchanges the purchaser's note, for the note of a remote sub-purchaser, which is also secured by a vendor's lien on the land, although that lien passes to him by the

Day v. Preskett.

transfer, he can not set it up against the party from whom he received it, in defense of a bill for the reformation of his bond for title, and the specific performance of his original contract, but must become the actor in a separate proceeding.

APPEAL from the Chancery Court of Macon.
Heard before the Hon. JAMES B. CLARK.

THE original bill in this case was filed, on the 31st August, 1857, by Milledge W. Preskett, against Stephen Day, Yancey McVay, and William D. Benson; and sought principally the reformation of a bond for titles, which was executed by said Stephen Day, to said McVay, on the 7th December, 1849, so as to make it include a part of the land which was omitted by mistake. The land sold by Day to McVay was the south-west quarter of section nineteen, in township seventeen, range twenty-three; while the land described in the bond for titles was the south-west quarter *of the west half* of said section. The purchase-money agreed to be paid by McVay was three hundred and twenty-eight dollars, for which he executed his three promissory notes, payable respectively on the first day of January, 1851, 1852, and 1853; the first note being for one hundred dollars, and the other two for one hundred and fourteen dollars each. The title-bond was conditioned to make titles on payment of the notes at maturity.

McVay went into possession under the contract, cultivated the land, and erected improvements; and he paid the first note for the purchase-money at its maturity, and the second some time after its maturity. In the latter part of the year 1850, or the first part of the year 1851, McVay sold the land to Preskett, the complainant, and assigned to him by written endorsement Day's bond for titles. The purchase-money agreed to be paid by Preskett was four hundred dollars, one half of which amount was paid in cash; and for the balance he gave his two promissory notes, for one hundred dollars each, payable respectively on the first day of January, 1852, and 1853. Preskett went into possession under the contract, and paid his first note at maturity; and some time in January, 1852, he sold the land to Glenn Barnett and Jeremiah Jennings, and executed to

them his bond for titles. Barnett and Jennings agreed to give four hundred and ninety-five dollars for the land, and executed their four joint promissory notes for the amount; one of which notes was for one hundred and eight dollars, and was payable on the 25th December, 1852. Preskett delivered possession of the land under the contract, and, at the same time, or soon afterwards, transferred said note for one hundred and eight dollars to said Day, and took from him, as the bill in this case alleged, McVay's unpaid note for the balance of the purchase-money.

Day removed from the State, in the latter part of the year 1852, without having executed a deed to the land to any of the parties. The notes of Barnett and Jennings being unpaid, a bill in chancery was filed on the 28th March, 1853, in the names of Preskett and Day jointly, to subject the land to their payment; to which bill Barnett and Jennings were the only defendants. That bill alleged, that the said note for one hundred and eight dollars was transferred by Preskett to Day in discharge of his indebtedness to Day on account of his purchase of the land. A decree *pro confesso*, by consent, was entered against both of the defendants, on the 5th May, 1853; and the chancellor rendered a final decree in favor of the complainants, on the same day, and ordered a sale of the land by the register; the proceeds of sale to be applied first to the payment of the note transferred by Preskett to Day, and the balance, if any, to be paid on the notes held by Preskett. At the sale under the decree, W. D. Benson became the purchaser, at the price of twenty dollars; and the report of the sale having been confirmed by the chancellor, the register executed a deed to said Benson, dated the 3d October, 1853, conveying to him the interest of said Barnett and Jennings in the land. In March, 1854, Preskett obtained a judgment against Barnett and Jennings, on their unpaid notes for the purchase-money which he still held; and in November, 1854, as such judgment-creditor, he offered to redeem the land from Benson, and tendered to him the amount required by the statute; but Benson refused to accept the tender. Having entered an actual credit on his judgment, as required by the statute, Preskett brought an action of unlawful detainer

Day v. Preskett.

against the tenant in possession, to recover the land; but before trial the case was compromised, by Preskett paying Benson a specified sum, and dismissing the suit, and Benson executing to him a quit-claim deed to the land, and delivering the possession.

In all these conveyances and legal proceedings, the land was described as in the original title-bond from Day to Mc-Vay, the east half of the quarter-section being omitted. In March, 1855, Benson, as the agent of Day, instituted an action of trespass to try titles against Preskett, to recover the portion of the land which was thus omitted; and Preskett then filed his bill in this case, asking an injunction of the action at law, a reformation of Day's title-bond to Mc-Vay, and, if necessary to perfect his title to the land, a corresponding reformation of the other conveyances and the chancery proceedings; and he added the general prayer, for other and further relief.

On the final hearing, on pleadings and proof, at the November term, 1859, the chancellor rendered a decree for the complainant; reforming the title-bond, enjoining the action at law, and requiring Day, or, on his default, the register, to execute a deed to the complainant, conveying the legal title to the land which was omitted by mistake. From this decree the defendant Benson appeals, and assigns as error the chancellor's decree and each part thereof.

CLOPTON & LIGON, for appellant.
GUNN & STRANGE, contra.

JUDGE, J.—That there was a mistake in the description of the land, in the bond for titles from Day to McVay, is not controverted; and it is not contended that the chancellor erred in correcting it. It is insisted, however, that the chancellor did err in decreeing that Day should convey the land in question to the complainant below, without providing for the payment of that portion of the purchase-money which Day alleges is still due to him, on account of his sale of the land. The balance of purchase-money thus claimed by Day, it is said, amounts to between eighty and one hundred dollars, and is claimed to be due upon the note

of Barnett and Jennings for one hundred and eight dollars, which was executed by them to the complainant, for part of the purchase-money, on the re-sale of the land by the complainant to them, and which was transferred to Day, in exchange for a note held by him on McVay, for a balance of the purchase-money due to Day on the sale of the land by him to McVay.

Conceding, for the sake of argument, that a balance was due to Day on the note of Barnett and Jennings, still it affords no legal reason against the decree for specific performance, as made by the chancellor. The notes exchanged, as above stated, grew out of separate and distinct contracts, and, consequently, were separate and distinct debts. By the exchange, each party divested himself absolutely of the ownership of one debt, and became the proprietor of another and a different debt; so that it was not a transaction in which the debt of Day against McVay took a new form by renewal or extension. By the transaction, Day not only parted with his debt against McVay, but also with the vendor's lien which existed for its security; for such a lien, being an incident to the debt, necessarily accompanies a transfer of the latter, if there be no stipulation to the contrary.—*Conner v. Banks*, 18 Ala. 42; *Kelly v. Payne*, 18 Ala. 370.

It results, then, that there was nothing due to Day on the contract which the chancellor required him specifically to perform; but, if anything was due him, it was on the note of Barnett and Jennings, which, as before stated, grew out of a distinct and independent contract. It is true the vendor's lien for the security of the note of Barnett and Jennings passed to Day with the transfer of the note to him; but, if entitled to its enforcement, he should be the actor in a separate and distinct proceeding for that purpose.

The record, however, shows some facts in relation to this note on Barnett and Jennings, which it may not be improper to mention. The west half of the south-west quarter of the section was, at the instance of Day, subjected to sale for the payment of the note, under a decree in chancery, against Barnett and Jennings; but the land brought at the sale only twenty dollars. By the exercise

of due diligence, Day might have realized the whole of his debt from this sale, as the land was evidently more than worth it; or, if it had been necessary, he might, in the same proceeding, have subjected the entire quarter-section to the payment of the note, by making the proper allegations and evidence as to the mistake in his bond for title to McVay. Thus it appears that, by his own want of diligence, Day exhausted his lien, without realizing the full payment of his debt; and it also appears that the note itself was subsequently disposed of by him in a contract with Barnett and Jennings, by which he attempted to acquire the east half of the quarter-section, that had been sold by him to McVay, but not described in the bond for title by mistake. The position of Day, then, was that of a vendor, attempting to assert a lien, with neither debt nor lien existing in his favor.

The objection that the evidence does not correspond with the case made by the bill, cannot be sustained. The testimony supports the allegations of the bill substantially, and that is all that is required.—*Eldridge v. Turner*, 11 Ala. 1050; *Gilchrist v. Gilmer*, 9 Ala. 985.

Decree affirmed.