IN THE MATTER OF JAMES H. BRESLIN

IN THE MATTER OF CHARLES N. VILAS.

*Excise laws — they do not prohibit hotel-keepers from selling intoxicating liquors to guests to be used with their meals.*

Under the statutes of this State regulating the sale of spirituous liquors, hotel-keepers and inn-keepers have a right to sell spirituous liquors to their guests on Sunday to be used with their meals. (BARTLETT, J., concurring on the ground that the long and uniform practical construction of the excise law should be deemed controlling.)

The prohibition contained in section 21 of chapter 628 of 1857, against the sale or giving of any intoxicating liquors or wines on Sunday " as a beverage," was aimed at the bar or drinking saloon of the hotel where drinks were indiscriminately retailed, and not to the furnishing of wines or liquors to guests in entertaining them.

The power of the board of excise is limited to the granting or refusing of a license; the statutes regulating the rights acquired by it, the restrictions to be observed and the punishment for each violation of its provisions.

As the board cannot insert in the license a limitation, restriction or condition which is repugnant to the statute, a clause inserted in the licenses of hotel-keepers or inn-keepers absolutely prohibiting the sale of liquor upon certain days named in them, is unauthorized and nugatory.

CERTIORAI to review proceedings upon a *habeas corpus.*

This is a proceeding brought to secure a judicial construction of the excise laws of this State. The defendants sold on Sunday, the one to a regular lodger in his house, the other to a traveler who frequently takes his meals there, intoxicating wine to be consumed with the respective dinners of such lodger and traveler.

Upon complaint of Captain Alexander S. Williams, warrants

were issued for their arrest, and being taken under such warrants the defendants are now brought before the court on *habeas corpus*.

*E. L. Andrews* and *Robert G. Ingersoll*, for the petitioners Breslin and Vilas.

*E. H. Lacombe*, for the respondent.

BRADY, J. :

This proceeding was instituted for the purpose of obtaining a judicial construction of the act of 1857 (chap. 628) and the acts amendatory thereof and relating thereto regulating the sale of intoxicating liquors, and the question immediately involved is whether the keeper of an inn or hotel is prohibited from selling to his guests intoxicating liquors to be used with their meals on Sunday. It may not be inappropriate to say that the legislature of this State has from the beginning of the present century been engaged in the effort to regulate the sale of intoxicating liquors, and these efforts seem to have culminated in the act of 1857, to which reference has already been made. It is not necessary to mention the several acts bearing upon the question, although reference may be made to one or more of them during the discussion of the question under consideration.

It must be said, however, that a distinction has been made, and particularly in the latter acts, between the seller of liquors *eo nomine*, and the innkeeper or hotel keeper, who, as such, furnishes them for his guests. The Revised Statutes provided that no keeper of an inn or tavern, authorized to retail spiritous liquors, should on Sunday sell or dispose of them or any of them, except to lodgers in such inns or taverns, or to persons actually traveling on that day in the cases allowed by law ; and by the twenty-first section of the act of 1857 it was provided that no tavern or hotel keeper, or person licensed to sell liquors, should sell or give away any intoxicating liquors or wines on Sunday or upon any day on which a general or special election or town meeting should be held, within one-quarter of a mile from the place where such general or special election or town meeting should be held ,in any of the cities, villages or towns of this State to any person whatsoever *as a beverage.*

It will be perceived on reading this statute that the prohibition is against selling or giving away intoxicating liquors as a beverage, there being no prohibition in express terms against providing it for guests to be taken with meals. In other words, the design of the statute was to prevent the indiscriminate sale of intoxicating liquors as a drink upon the days named to the public generally.

The statutes are to be construed with reference to existing things, for the purposes of ascertaining what was the good which would result, or the evil that was to be overcome by their passage; and the evil to be overcome was the sale of liquor during the day without reference to meals and by the prohibition of which it was hoped that there would be no intoxication and consequently no riot or disturbance, or interference in any way with the peace which was regarded as indispensable upon the days named.

In the State of Wisconsin, it was provided by statute that if any tavern-keeper or other person should give away or barter any intoxicating liquor on the first day of the week, commonly called Sunday, or on the day of the annual town meeting or the annual fall election such tavern-keeper or other person so offending should be deemed guilty of a misdemeanor. And the court said, in construing that statute in *Jensen* v. *State* (60 Wis., 531), " the evil to be suppressed or at least mitigated by the enactment of this law, was the drunkenness and general disorder which resulted from the unrestricted sale of intoxicating liquors on election days and town meeting days, which tended to the corruption of the elections held on such days, and which on Sundays disturbed the peace, quiet and order which ought to characterize that day.

It is perfectly notorious that when the act of 1857 was passed the existence of a bar or drinking saloon as a part of the hotel was a distinguishing characteristic, and that there intoxicating liquors, drinks or beverages were to be obtained during the day without reference to meals. These were the chief sources of intoxication, because of the readiness with which the appetite could be appeased or gratified, and if the drinker felt so disposed, the ease with which he could go from one inn to another and vary whilst he increased the number of his drinks. Thus it was that the beverage was obtained which is alluded to in the statute.

The lexicographers give us as the primary meaning of the word

beverage: " Liquor to be drunk," " drink ;" although there are other meanings but all involving the proposition that it is a drink. (See Worcester and Webster.)   There seems to be little doubt that the prohibition against it on the days named as a beverage was aimed at the bar or drinking saloon already referred to, where drinks were indiscriminately retailed and from which unfortunate results were often manifest.

In the act of 1873 (chap. 549), amendatory of the acts of 1857 (chap. 628) and 1870 (chap. 175), which indicates an inten-tion on the part of the legislature to preserve the distinction suggested between the hotel and its bar-room or drinking saloon, it is provided that nothing contained in the fifth section which relates to the sale of liquor between one and five o'clock in the morning shall be construed to prevent hotels from receiving and entertaining *travelers* at any time subject to the restrictions contained in the act and the act amended.   The word " entertaining " directly expresses the intention to make this distinction between the hotel as such, and the bar or drinking saloon ; because we find that " entertaining " is defined to be " affording entertainment," and that entertainment means " a hospitable repast ; " a " banquet " and a banquet is said to be " a grand entertainment of eating and drinking , " " a sumptuous feast." (See Worcester and Webster )

The view expressed of the effect of this phraseology of the statute is strengthened by the suggestion that the legislature were dealing with the subject of intoxicating drinks and no other, and that the word " entertaining " could not have meant the mere service of food for which no legislation was required, it being the undoubted right of a hotel-keeper, with which even the legislature itself could not interfere, to receive persons for that purpose as well as for lodgment.

A kindred question was presented in *Wood* v. *The City of Brooklyn* (14 Barb., 425): The defendant passed an ordinance entitled " A law to prevent the sale of certain commodities in the city of Brooklyn on Sundays," the second section of which provided that no person should sell or dispose of any ale, porter, strong or spirituous liquors in that city on Sunday; and it was held to be void, so far as it related to the sale by inn-keepers to their lodgers and lawful travelers pursuant to their licenses, because in conflict with the provisions of the Revised Statutes, to which attention has

already been called. (See 1 R. S., 678, § 4; Id. 676, § 72.) This case is an express authority for the proposition that under the Revised Statutes the inn-keeper could sell to his lodgers or travelers spirituous liquors, and for the proposition also that a distinction was made against the indiscriminate sale of liquors on Sunday, and also to sustain the suggestion that there was designed to be a difference between the sale of intoxicating liquors to the general public and to the lodgers or guests of the hotel-keeper as such. The subject thus discussed is briefly considered. It might be extended by allusions to numerous cases in which inns and hotels, their origin, offices and extent, and the good and bad results flowing from their existence, have been given, described and commented upon. To indulge in this vein of thought would be to write an essay upon the subject which for the purposes of this controversy, however interesting it might be, is not necessary.

An analysis of the statute has led to the conclusion that hotel-keepers and inn-keepers under its provisions have a right to sell spirituous liquors to their guests on Sunday to be taken with their meals. But even if this view, as a legal deduction from the various statutes, be incorrect, another principle of law presents itself which must be applied, viz., that since the passage of the act of 1857, and until within a very recent date, a period extending over thirty years, the practical construction of the act has been such as is herein stated, and it must be assumed that this construction has been known to every legislature which has assembled since 1857, and yet no act has been passed interfering with it in any way. "Such a construction presents itself to a court with a force that is not easy to resist," says Cooley on Constitutional Limitations (p. 81 and cases cited). And in the cases of *Stewart* v. *Laird* (1 Cranch, 299); *Martin* v. *Hunter's Lessee* (1 Wheat., 352); *Cohens* v. *Virginia* (6 id., 418); *Packard* v. *Richardson* (17 Mass., 144); *In re Warfield* (22 Cal., 59), and *Scanlan* v. *Childs* (33 Wis., 663), and in Sedgwick on Statutory and Constitutional Laws (212, 213, 214 [2d Am. ed.]), the doctrine is asserted and maintained that in construing an act the court may properly refer to the history of the times and situation of the people when it was passed for the purpose of determining its meaning, scope and intention, and that a contemporaneous is generally the best construction of a statute, giving as it

does the sense of the community to the terms made use of by the legislature. The dictum in 3 Pickering, 518, is singularly felicitous. " Contemporaneous exposition," it is said, "of doubtful provisions in all instruments, and particularly in legislative enactments and constitutional charters, are held to be legitimate and useful sources of construction ; what has been done in the beginning and has continued to be done for a long series of years, without any question as to the rightful power and authority on which such rights have been granted, may be presumed by succeeding public agents to have been rightfully and properly done." And these all illustrate the old maxim, " *Contemporanea expositio est fortissima lege.*"

These conclusions are not at all affected by the form of the license. A critical examination, assisted by the deliberate and mature consideration and comparison of the act of 1857 and the several amendments thereof. suggested by the argument at the General Term, demonstrated that the power of the board of excise is limited to the granting or refusing of licenses. If the license be granted, the statutes regulates the rights acquired by it, the restrictions to be observed and the punishment for each violation of its provisions. It cannot, therefore, either enlarge or diminish these rights and obligations, or interfere with them in any way. The officers composing it cannot insert in the license a limitation, restriction or condition which is repugnant to the statute ; but if they do so, it is void, and hence the clause in the relators' license absolutely prohibiting the sale of liquor upon certain days named in it, is, as the result of our construction and interpretation of the statute, unauthorized and nugatory. It follows that the arrest of the relators was unwarranted and they should be discharged.

Ordered accordingly.

VAN BRUNT, P. J. :

In concurring with the opinion of Mr. Justice BRADY, and in addition to what has been so well said by him upon this appeal, it may not be out of place to consider the necessary results which must follow the construction sought to be placed upon the excise laws by the respondent. It is true that the court is bound to expound the law according to the expressed intention of the legislature, no matter what consequences follow such construction,

because any other course makes the court usurp legislative functions, which it should never attempt to exercise, as no such power has been committed to it by the organic law of the land. But in ascertaining what the intention of the legislature was in the enactment under consideration, the consequences arising from one interpretation which may be avoided by another may properly be considered.

By section 21 of the act of 1857 (chap. 628), it was provided as follows: " No inn, tavern or hotel keeper or persons licensed to sell liquors, shall sell or give away any intoxicating liquors or wines on Sunday or upon any day on which a general or special election or town meeting shall be held * * * to any person whatever as a beverage." By the act of 1873 (chap. 549, § 5) this section was amended by striking out the words " or person licensed to sell liquors" and inserting instead thereof the words "any other person." If, therefore, the words " as a beverage" are to be interpreted to include the drinking of any kind of wine or liquor at any time or under any circumstances except where the same is drunk for medicinal or sacramental purposes, then no person either upon a Sunday or upon any election day, general or special, could supply at his own table to members of his own family a single glass of wine.

The language of the section is broad and explicit, and exempts no person from its inhibition. If the wine is to be drunk under any circumstances, the person giving it to another is liable to the penalty prescribed by the act. I can see no escape from this conclusion if the broad definition suggested is given to the words " as a beverage." It is clear that the legislature never intended to enact a law of the tyrannical character which the present law would be if such a construction is put upon it, and we necessarily must see whether some other reasonable interpretation may not be adopted which will better subserve the ends which the legislature desired to attain by its enactment. It is evident that by the section under consideration the legislature did not intend to absolutely prohibit the sale or giving away of intoxicating liquors or wines on Sundays or election days by the keepers of inns, taverns or hotels, or other persons, because they have not so enacted, but have limited the prohibition to the selling or giving away as a beverage. There is in this language an express recognition of a right to sell or give away 'ch will not be in contravention of the statute.

It may be urged that this language simply permitted a sale or giving away upon those days for mechanical, chemical or medicinal purposes and for sacramental use.   In answer to this suggestion it may be sufficient to observe that articles for mechanical, chemical and sacramental purposes are not the subjects of Sunday trading and that wine or liquors for medicinal purposes are usually procured from other sources.   It seems to be clear, therefore, that the legislature at the time of the enactment of the provision in question, had in view other circumstances in which it might be proper to sell or give away intoxicating liquors and wines on Sundays and election days.   An examination into the origin of the word " beverage" shows clearly what was intended.

The word " bever " which is the root of the word " beverage " means " a little repast between meals," and the word " beverage " came into use and was largely applied to mixed drinks, something made expressly for the occasion, although by many writers it has been used to apply to any pleasant drink.   And it, therefore, seems to me that the legislature had this derivation plainly before it in the use of the word in the act in question.   This interpretation gives to the whole act full force and effect and avoids the evidently erroneous conclusions which the broadest definition of the word would entail.   A consideration of another provision of the law also sustains this interpretation.   Section 5 of the act of 1870 (chap. 175) as amended in 1873 (chap. 549), contains a requirement that all places licensed shall be closed and kept closed at all times when selling is not authorized by law, and it is further provided that nothing therein contained shall be construed to prevent hotels from receiving and entertaining travelers at any time, subject to the restrictions contained in the act as amended.   It is evident from the position of this exception in the section referred to, that the exception was only intended to apply to the command that all licensed places should be kept closed during certain hours, in order that the business of hotels, viz., the receiving and furnishing entertainment to travelers should in no way be interfered with by the provision that all licensed places should be kept closed.   It is here clearly assumed that the right of hotels to entertain travelers existed under the other provisions of the act, and it was to prevent the operation upon

hotels of the provision for closing that the exception was inserted and for this purpose only.

Mr. Justice BRADY in his opinion has conclusively shown that the right to entertain travelers justifies the furnishing of food and wine to be drunk therewith, and if the legislature intended the word "beverage" to apply to all wines furnished to be drunk at any time, the right to entertain travelers would not have existed independent of the exception referred to, which right, as has been shown, is clearly recognized by the exception. It is true that in the act of 1855 (chap. 231) the word beverage may have been construed to include the use of wines and liquors under any circumstances except for mechanical, chemical, medicinal or sacramental purposes, but the act of 1855 was passed for a very different purpose and for a very different object from that which actuated the legislature in the enactment of the act of 1857 and the amendments thereto. The word beverage may have been used in the act of 1855 in a broader sense than may have been entirely correct, and yet in the act of 1857 it may have been used, as it undoubtedly was, in its true and more restricted meaning. It seems to be evident, therefore, that there was no intention on the part of the legislature to impose any greater restraint than that which is so clearly indicated in Mr. Justice BRADY's opinion.

BARTLETT, J. :

I concur in the result reached by my associates on the ground that the long and uniform practical construction of the excise law should be deemed controlling in the determination of these appeals. I cannot believe that the legislature would have tolerated for thirty years the failure of the authorities to enforce the law, if that body had intended by a statute enacted as long ago as 1857, to prevent inn-keepers from furnishing wine to guests and travelers with their meals on Sunday.

Order reversed and defendants discharged.