## DE WEESE v. SMITH et al.

(Circuit Court, W. D. Missouri, C. D.    October 19, 1899.)

1. NATIONAL BANKS—ASSESSMENTS AGAINST STOCKHOLDERS—CONCLUSIVENESS OF COMPTROLLER'S ACTION.

The action of the comptroller of the currency in ordering an assessment upon the stockholders of an insolvent national bank involves a determination of the necessity for such assessment, which is quasi judicial, and is conclusive on the stockholders.

2. SAME—ACTION TO RECOVER ASSESSMENTS—FORMER RECOVERY AS A BAR.

When the comptroller of the currency has directed the receiver of an insolvent national bank to enforce the collection of an assessment against the stockholders for an amount less than the par value of their stock, and the receiver has recovered a judgment at law thereon against a stockholder, which has been satisfied, he cannot maintain a second action against such stockholder to recover a further assessment. The cause of action to recover an assessment is one upon the stockholder's contract, which cannot be split, and the first recovery is a bar to any subsequent action on the same contract.

3. SAME—POWER TO MAKE SECOND ASSESSMENT.

The ordering of the making and enforcement of an assessment on the stockholders of an insolvent national bank by the comptroller is a quasi judicial act, which exhausts the power and jurisdiction conferred upon him by the statute, and he is without authority to make a second assessment.

4. LIMITATION—ACCRUAL OF CAUSE OF ACTION.

The liability of the stockholders of a national bank to an assessment on the bank's insolvency is so far conditioned upon the sufficiency of the general assets to pay its indebtedness that the receiver is only authorized to proceed against a stockholder after the comptroller has determined the necessity of the assessment, and the amount required: hence the statute of limitations does not commence to run against an action to enforce the stockholder's liability until such determination has been made.

This is an action at law by the receiver of an insolvent national bank to recover the amount of an assessment from stockholders. Heard on motion for judgment for want of sufficient answer.

William S. Shirk, for plaintiff.

William M. Williams and James T. Montgomery, for defendants.

PHILIPS, District Judge. This is an action at law to recover of the defendants, as stockholders in the First National Bank of Sedalia, the sum of $2,500 and interest, as a second assessment imposed by the comptroller of the currency upon the stockholders of said bank. The petition alleges that the bank became insolvent, closed its doors, and ceased to do business on the 4th day of May, 1894, and that on the 10th day of May, 1894, the comptroller of the currency appointed a receiver for said bank, who duly qualified, and began winding up the affairs of said bank; that on the 13th day of April, 1895, said comptroller determined that it was necessary to enforce the individual liability of the stockholders, and to collect from them an assessment equal to 75 per cent. of the amount of their stock; and that, said assessment proving insufficient to satisfy the debts of the bank, the comptroller on the 7th day of February, 1899, made a further assessment on said stockholders of $25 upon every share of the capital stock held by them. This and other suits against said stockholders for the collection of this additional assessment, so called, were instituted in this court on the 5th day of September, 1899. This opinion is to apply to all of these cases, in so far as the questions herein involved are common to all of them. The defendants answered, pleading three facts as a defense to the action: First. That the sum of $187,000, which was the sum the stockholders were called upon to contribute under the first assessment, together with the other assets of the bank which came into the hands of the receiver, was sufficient to pay all the debts and engagements of the bank. But, after the failure of the bank and the appointment of the receiver, the sum of $80,000 of the assets in the receiver's hands was wrongfully and without the authority of law diverted by an investment in property in the state of California, and subsequently lost, and that the last amount, 25 per cent. of the stock of said bank owned by the defendants, is called for solely to make good the losses sustained by said wrongful diversion and investment of the funds as aforesaid, and to supply the deficiency caused by the loss arising from such investments. Second. The facts respecting the first assessment aforesaid are recited, and the answer further alleges that, to enforce the collection of said 75 per cent. of stock, the said receiver on the 25th day of July, 1895, instituted in this court an action against the defendants, and on the 19th day of October, 1896, the receiver recovered judgment against them therein for the sum of $7,500, the amount of said demand, which judgment the defendants satisfied. The answer then alleges that the liability of the defendants, as such shareholders, for the contracts, debts, and engagements of the bank, was concluded by the judgment aforesaid. Third. The statute of limitations of five years, under the state statute, is pleaded against the demand. On this answer the plaintiff has filed motion for judgment on the ground that the matters pleaded in the answer constitute no defense to the plaintiff's action.

The first matter of defense pleaded rests, as is inferred from the brief of defendants' counsel, upon the act of congress approved March 29, 1886 (24 Stat. 8). This act prescribes the course to be

taken by a receiver of an insolvent national bank when it is deemed necessary to apply the assets in his hands for the protection of the equity of the bank in any property, real or personal, under mortgage or assignment, or other legal claim attached thereto, when the property is to be sold under execution, foreclosure, or other proper order of a competent court. It directs that the receiver shall certify the facts, with his opinion as to the value of the property to be sold, and the value of the equity of his trust therein, to the comptroller of the currency, with a request to use and expend the money in his trust as may be necessary to protect such equity. The act requires the approval of the comptroller and of the secretary of the treasury to authorize such application of the funds in the hands of the receiver. The allegations of the answer touching this matter are predicated of the noncompliance of the receiver with the requirements of this statute. The difficulty in entertaining this defense to this action lies in the ruling of the supreme court in Kennedy v. Gibson, 8 Wall. 498–505, in which it is held, in effect, that the comptroller, in deciding when it is necessary to institute proceedings against the stockholders to enforce their personal liability, acts quasi judicially. "These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue." If the comptroller is authorized to make the assessment, matters of defense which go merely to the question as to the necessity of the collection of the additional sum to meet the liabilities of the bank are precluded by his determination. At all events, such a defense is equitable in its character, and in this jurisdiction could not be interposed in an action at law. Whether or not the defendants could, by cross bill on the equity side of the court, stay this action, and have such matters investigated, and prevent the entering of judgment herein, if the facts were found to exist, is not necessary to be determined in passing upon the motion herein.

The second question to be decided is whether or not, after the comptroller of the currency has directed the receiver to proceed to enforce the collection of the 75 per cent. of the stockholders, and the receiver has recovered judgment therein at law, and the judgment has been satisfied, the receiver can, under the direction of the comptroller of the currency, proceed to enforce by suit the further assessment of 25 per cent.? Section 5151, Rev. St. U. S. 1878, declares that "the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association to the extent of the amount of their stock therein at the par value thereof in addition to the amount invested in such shares." Section 5234 of this statute authorizes the comptroller, upon the declared insolvency of such bank, to appoint a receiver therefor. "Such receiver, under the direction of the comptroller, shall take possession of the books, records and assets of every description of such association; collect all debts, dues and claims belonging to it. * * * And may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders." Early

in the history of the administration of this statute, the supreme court, in the case of Kennedy v. Gibson, supra, gave certain construction and directions with reference to this statute, which have ever since obtained. While the statute in terms directs that the receiver, if necessary to pay the debts of the bank, may enforce the individual liability of the stockholders, this must be done under the direction of the comptroller. Such direction of the comptroller is conclusive on the stockholders as to the necessity of proceeding against them for contribution. The comptroller determines the time when such demand shall be made upon, as also the per cent. to be collected from, the stockholders. In the very nature of things, he is supposed, after the suspension of the bank and the appointment of the receiver, to become advised at as early a day as possible of the condition of the bank's assets, and the necessities of the estate It was anticipated, however, that it might be difficult for the comp troller, in certain cases, to determine the exact amount of contribution to be exacted from the stockholders, and that there might be dangers to a successful collection from them by delaying the proceedings to enforce their liability. Therefore the court, in anticipation that a greater sum might be collected from the stockholders than might ultimately be required to liquidate the indebtedness of the bank, said:

"If too much be collected, it is provided by statute that any surplus which may remain after satisfying all the demands against the association shall be paid over to the stockholders. It is better they should pay more than may prove to be needed, than that the evils of delay should be encountered. When contribution only is sought, all stockholders who can be reached by process of the court may be joined in the suit."

The court further in this opinion said:

"Where the whole amount is sought to be recovered [by the receiver], the proceedings must be at law. Where a less amount is required, the proceedings may be in equity; and in such case an interlocutory decree may be taken for the contribution, and the case may stand over for further action of the court —if such action should subsequently prove to be necessary—until the full amount of the liability is exhausted."

There is nothing in this postulate, it seems to me, to enforce the conclusion that the court meant to give countenance to the proposition that the comptroller might make a provisional assessment, and, after enforcing its collection in an action at law, repeat the process until the 100 cents on the dollar of the shares should be reached. What did the court mean by saying that, if the demand be for the whole amount, the proceeding must be at law? It is inferable that the learned justice had in mind certain well-established principles of the common law applicable to the enforcement of this statute. Among these principles the following summary is deducible from the best text writers on the construction of statutes: Where the statute directs that an act be done by a given officer, without pointing out the special manner of doing it, it is presumed that the method shall be according to the course of the common law; and, where a statute affirms or supplements or supersedes the rule of the common law, the legislative act "must be construed with reference to the common law"; and, in so far as it is reasonable, the interpreta-

DE WEESE v. SMITH. **313**

tion of the new law must be in accordance with the common law. In other words, legislative enactments, in the absence of express contrary provisions therein, when sought to be enforced, must have applied to them the rules and methods of common-law procedure, as such statutes are not presumed to make any change beyond what is expressed in their provisions, or fairly implied in them in order to give them full operation. Suth. St. Const. § 290; Black, Interp. Laws, p. 232; End. Interp. St. § 127. So, while the provisions of the national banking act authorize the receiver, under the direction of the comptroller, to proceed to enforce the individual liability of the stockholders, the mode of such procedure is referred to the established rules of the common law, and the system of practice in the courts where the action is brought. It must be conceded that the right of action against the stockholders created by this statute is one arising ex contractu. "As the ownership of stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation." Bank v. Hawkins, 174 U. S. 370, 19 Sup. Ct. 742. So Judge Blodgett, in Irons v. Bank (D. C.) 21 Fed. 198, said, "It was the intention of congress to make this a contract liability." The statute declares what the liability of the stockholder is. Therefore, when a stockholder takes his stock, the provision of the statute, in contemplation of law, is regarded as written into his subscription. This consti tutes his undertaking, the bond of his obligation; and, when proceeded against to enforce this liability, it is essentially a declaration on a contract. The contract is a unit, indivisible, in solido. When the comptroller directs the receiver to proceed against the individual stockholder, it is to enforce the contract which the statute, in effect, writes into his subscription. The contract being a unit, how can the receiver split it up and sue upon it in parts? No rule of the common law is more firmly rooted than that a cause of action arising out of a single contract cannot be halved, or in less degree subdivided. So that, if the demandant proceeds to enforce the collection of a part only of his demand, he is held to have made his election to take a part in satisfaction thereof; and such recovery is an effectual bar to the enforcement of any claimed residue. As said by Mr. Justice Miller in U. S. v. Throckmortin, 98 U. S. 65:

"There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy, namely, 'Interest reipublicæ ut sit finis litium,' and 'Nemo debet bis vexari pro una ei eadam causa.'"

Accordingly Chief Justice Waite, in Baird v. U. S., 96 U. S. 432, said:

"It is well settled that where a party brings an action for a part only of an entire, indivisible demand, and recovers judgment, he cannot subsequently maintain action for another part of the same demand. Thus, if there are several sums due under one contract, and suit is brought for a part only, a judgment in that suit would be a bar to another action for recovery of the residue."

Judge Napton, in Transportation Co. v. Traube, 59 Mo. 362, said:

"It is now well settled that a judgment concludes the rights of the parties in respect to the cause of action stated in the pleadings on which it was ren-

dered, whether it includes the whole or only part of the demand sued on, upon the ground that an entire claim, arising either upon a contract or wrong, cannot be split up into several actions. * * * And even where several claims, payable at different times, arise out of the same contract or transaction, separate actions may be brought as each liability accrues; but in this case it has been held that, if no action is brought until more than one is due, all that are due must be included in one action, and, if an action is brought when more than one is due, a recovery in that suit will be a bar to a second suit brought to recover the other claims that were due when the first was brought."

The reason of this rule is very succinctly and clearly expressed by Judge Thompson in Laine v. Francis, 15 Mo. App. 108, in which it was held that, where a party took a decree charging a portion of the separate estate of a married woman with the payment of his promissory note, it was a bar to a second action to charge other of her separate estate for the payment of an unpaid balance thereon:

"It is the general rule that where a party has chosen his ground, and litigated the subject-matter of an action to its final conclusion, he has exhausted his remedy, except for the purpose of such supplemental proceedings as the statute law or principles of equity may give him for the enforcement of his judgment. * * * The rule rests upon two reasons. The one is technical, and the other substantial. The technical reason is that, where a party having a cause of action prosecutes it to judgment, his cause of action is thereafter merged in the judgment, and whatever further remedy he may have under the law must be founded on the judgment, and not on the original cause of action. The substantial reason is that the law, on the grounds of obvious justice and convenience, discountenances splitting of causes of action and multiplying of suits."

Freem. Judgm. § 238, asserts that:

"It may be laid down as a general rule that each separate agreement or transaction will give rise to one entire and independent cause of action, and to but one."

Bliss, Code Pl. § 118, expresses the rule thus:

"It is a rule that a cause of action, as one springing from a single contract, cannot be so split as to authorize more than one action; and the same rule would make it improper to so divide a single cause of action by separate statements in one complaint as to show more than one cause of action."

And the supreme court of this state, in Hoffmann v. Hoffmann's Ex'r, 126 Mo. 497, 29 S. W. 606, said:

"Undoubtedly we think the liability of the trustee under the marriage contract would constitute but a single demand, though the items with which he is chargeable came into his hands at different times and from different sources."

The court of appeals of New York, in Secor v. Sturgis, 16 N. Y. 548, states the distinction between demands which are single and entire and those which are several to be that the former arise immediately out of one and the same contract, and the latter out of different contracts. This rule of law is so inflexible that it has been applied to a suit for the foreclosure of a mortgage; so that if the mortgage covers several tracts of land, and the mortgagee proceeds to foreclose as to a portion of the land, it is a waiver of the lien as to the rest of the tract, and he cannot foreclose as to the residue in a second suit. Mascarel v. Raffour, 51 Cal. 242; Sedam v. Williams, 4 McLean, 51, Fed. Cas. No. 12,609. It has also been applied to the instance of the vendor having a lien for the purchase money on lands. If he enforces the lien as to a portion of the land, he

is precluded from a second suit for any balance. Day v. Preskett, 40 Ala. 624–629. So, also, if he proceeds to enforce his lien for that portion of the money which is due, without more, he exhausts his remedy as to the rest of the land for that portion of the debt afterwards maturing. Codwise v. Taylor, 4 Sneed, 346. The liability of the stockholders partaking of the nature of a trust fund for the benefit of the creditors of the bank, in the absence of any interdicting statutory provision, all of the beneficiaries of the fund, under equity jurisprudence, would be entitled to unite in a bill in equity against the stockholders for contribution. If such beneficiaries should bring such suit to enforce the liability of the stockholders, say for 50 per cent. of the amount of stock held, and, after its recovery, such sum not proving adequate to the full protection of the creditors, could they institute a second suit for the recovery of the remaining 50 per cent.? Unquestionably not. What difference in principle can it make that the statute under review authorizes the receiver of the bank, under the direction of the comptroller, to enforce the liability? In such case he represents the bank and the creditors, and acts for them,—as much so as if the suit were in his name to the use and at the relation of the creditors. The statute gives the comptroller and the receiver no more authority to split up the demand. and twice vex the debtor, than the creditors would have if permitted to proceed at common law.

While the term "assessment" is employed conventionally to designate the action taken by the comptroller looking to the enforcement of the liability of the stockholders, no such term as "assessment" or "assessments" is found in the statute. The statute simply declares that the liability of the stockholder is to the extent of his stock, and in case of a deficiency of general assets the receiver "may enforce the individual liability of the stockholders." The court. in Kennedy v. Gibson, supra, pointed out the very path to be pursued in enforcing this liability, to avoid the risks of either prematurely fixing the amount to be collected at law from the stockholders, as also of improvidently waiting too long in calling upon the stockholders to respond, as also how to avoid hardships upon the stockholders by exacting from them more than might be necessary to meet the demands of the creditors. If he sues at law, it is for the whole amount to be collected under the stockholders' contract; or he may proceed in equity against all of the stockholders, to avoid a multiplicity of suits, for contribution; "and in such case an interlocutory decree may be taken for contribution, and the case may stand over for further action of the court—if such action should subsequently prove to be necessary—until the full amount of the liability is exhausted."

It is suggested that the supreme court, in the later case of U. S. v. Knox, 102 U. S. 422, took it for granted that the right of successive assessments by the comptroller, and consequently the right of separate actions for their enforcement, exist, from the following paragraph in the opinion:

"Although assessments made by the comptroller under the circumstances of the first assessment in this case, and all other assessments, successive or other-

wise, not exceeding the par value of all the stock of the bank, are conclusive upon the stockholders, yet if he were to attempt to enforce one made, clearly and palpably, contrary to the views we have expressed, it cannot be doubted that a court of equity, if its aid were invoked, would promptly restrain him by injunction."

The language of courts in the course of an opinion must be "re strained unto the fitness of the matter." The question, and the only question, under consideration in that case, was whether or not, after the receiver, under the direction of the comptroller, had proceeded to enforce the assessment against the stockholders, which, if paid by all the stockholders, would have been sufficient to liquidate the debts of the bank, he could proceed against the stockholders to contribute their quota on the balance of the amount of their stock to make up the deficit occasioned by the failure to collect from the other stockholders. It is to be observed that the original proceeding in that cause was in equity, to enforce the demand against all the stockholders, in which an interlocutory decree might have been taken, and the cause continued subject to supplemental decree or further proceeding, according to the course suggested in Kennedy v. Gibson, supra. The question decided was that the additional assessment could not be made, because the liability of the stockholders is several, and not one for another. Mr. Justice Swayne wrote the opinion in both of said cases, and, in employing the language in the paragraph above quoted, he did not have in mind the case here at bar, but the instance of "assessments made by the comptroller under the circumstances of the first assessments in this case, and all other assessments, successive or otherwise"; that is, under circumstances where, in conformity to what had been suggested in the Kennedy Case, the receiver proceeded in equity, under whose flexible rules the court could enter an interlocutory decree, and continue the case for additional orders in the controversy as the equities of the case might require; so that if the receiver sought in the name of equity to do inequity, the court could restrain him, as was done, by denying the writ of mandamus.

A further potential consideration enforcing the conclusion reached on this question is the fact, attested by the report of the present comptroller of the currency for 1898 (volume 1, p. 36), that, for 33 years after the adoption of the national banking act, by all of his predecessors in office this statute had received the construction, in practice, that but one assessment was enforceable, "notwithstanding further developments in the administration of a trust may demonstrate error in the assessment." In other words, during all that period the officers of the government intrusted with the execution of this statute proceeded upon the construction that, after they had enforced the per cent. ascertained to be necessary, they had exhausted their power under the statute, and never directed a further action against the stockholders. It is one of the fundamental rules in the interpretation of a statute to ascertain what has been its contemporary construction; the sense of the legal profession in regard to it; the course and usages of business thereunder. "A contemporaneous is generally the best construction of a statute. It gives

the sense of a community of the terms made use of by the legislature. If there is ambiguity in the language, the understanding and application of it when the statute first comes into operation, sanctioned by long acquiescence on the part of the legislature and judicial tribunals, is the strongest evidence that it has been rightly explained in practice." Packard v. Richardson, 17 Mass. 144. In U. S. v. Moore, 95 U. S. 760, the court said, "The construction given to the statute by those charged with the duty of executing it ought not to be overruled, without cogent reasons." In Scanlan v. Childs, 33 Wis. 663, the learned justice who wrote the opinion said, "The general understanding of a law, and constant practice under it for 20 years, by all the officers charged with the execution of it, unquestioned by any public or private action, is strong, if not conclusive, evidence of the true meaning." The comptroller's office, since the enactment of the national banking system, has been occupied by eminent lawyers, who are presumed, on grave questions of construction of statutes to be administered by them, to have recourse to the advice of the learned law officers of the government; and it is presumable that there was a consensus of opinion among those charged with the execution of this statute that it did not authorize the course of proceedings taken in this case. That opinion prevailed over a period of 33 years following the enactment of the statute, when the occasion had frequently arisen for such construction. These defendant stockholders therefore had the right to assume when they paid the first heavy assessment that the comptroller had made his election, and that no further demand would or could be made upon them. What "cogent reason" has arisen at this late day to compel the courts to overrule the construction given this statute by the executive officers of the government during the average life of a man? The effect of changing the rule is to subject these stockholders to exactions never before imposed upon other stockholders in the whole history of national banks. It would produce inequalities among antecedent subscribers to such stock, whose money and confidence have contributed to the building up of so valuable a governmental agency as national banks. Discrimination in the administration of a public law among subjects equal in rights is a perversion of justice in any government, to which the courts ought to be the last to contribute.

The further question, not less worthy of consideration, is, did not the comptroller, in ordering one assessment, and the enforcement thereof, exhaust his power and jurisdiction in the case? "When the law, in words or by implication, commits to any officer the duty of looking into the facts, and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is termed 'quasi judical.'" Bish. Noncont. Law, § 786. So the acts of assessors in determining what property is liable to, and what is exempt from, taxation, and the value of the taxable property, "and otherwise in making up the assessment roll, are essentially judicial in character, and the assessment roll, when finally completed by the supervisors, stands as a judgment." Throop, Pub. Off. § 541; Barhyte v. Shepherd, 35 N. Y. 238; Weaver v. Deven-

dorf, 3 Denio, 117; Swift v. City of Poughkeepsie, 37 N. Y. 511; Buffalo & State Line R. Co. v. Board of Sup'rs of Erie Co., 48 N. Y. 93. Where a statute has clothed a designated officer with power to perform a quasi judicial act, and in a particular way, the power is single, and, when once exercised, is exhausted, and the act can neither be recalled nor supplemented by such officer. 19 Am. & Eng. Enc. Law, p. 548. This doctrine is illustrated by the case of Jermaine v. Waggener, 1 Hill, 279, 284, 285, where the commissioners were authorized to adopt a plan for the construction of a canal, who, having passed upon the plan, the court held, put an end to their functions. The court said:

"Their powers were at an end. These were quasi judicial. The adoption of a specific plan was but another name for the rendition of a judgment by a court of limited jurisdiction. The judicial power is limited to a single act, and has become functus officio by its performance."

See, also, People v. Board of Sup'rs of Schenectady Co., 35 Barb. 408.

It is on this ground that the action of the comptroller, under the national bank act, in determining the necessity of an assessment, and directing the proceeding against the stockholders, is conclusive, as he acts quasi judicially. His power in this respect is wholly derivative. It comes from the statute. Why, then, is not this judicial determination "limited to the single act," and why does it not "become functus officio by its performance" in making the first assessment? Is he authorized by this statute to either recall and revise his determination, or to repeat the exercise of power by supplemental judicial determinations, especially where the first judgment has been executed?

The statute of limitations: It is to be conceded to the defendants that the period of limitation fixed by the statute of the state of Missouri is applicable to this case. Butler v. Poole (C. C.) 44 Fed. 586; Thompson v. Insurance Co. (C. C.) 76 Fed. 892; Campbell v. City of Haverhill, 155 U. S. 610, 15 Sup. Ct. 217. It is the established rule that the statute of limitations begins to run the instant the cause of action arises, and there is a person competent to institute suit, or as soon as the party has the right to apply to the proper tribunal for redress. Tapley v. McPike, 50 Mo. 589. The contention of the learned counsel for defendants is that the liability of the stockholder is complete, and subject to proceedings for its enforcement, when the banking association becomes insolvent and suspends business, that the comptroller merely directs when and to what extent the liability shall be enforced, and that the mere fact of his having to make investigation of the condition of the affairs of the bank, to enable him to determine whether resort shall be had to the stockholders, does not suspend the running of the statute,— it merely postpones the proceeding. In support of this contention, reference is made to the decision of the supreme court of Ohio in King v. Armstrong (Ohio) 34 N. E. 163, which is, it must be conceded, a very able presentation of this view of the law. The supreme court, in Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739. Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, and Glenn v. Mar-

bury, 145 U. S. 499, 12 Sup. Ct. 914, has laid down the rule that statutes of limitation do not commence to run against claims against stockholders, where the subscription is payable as called for, until such call is made, upon the ground that no obligation rests upon the stockholder to pay until some authorized demand in behalf of the creditors is made therefor, as he owes the creditors nothing, and he owes the company nothing, "save such unpaid portion of his stock as might be necessary to satisfy the claims of the creditors." So under the statute respecting the liability of stockholders in a national bank. While the statute makes them liable, to the extent of their stock, for the payment of the debts of the bank, yet this liability is so far conditioned upon the sufficiency of the general assets that the receiver is only authorized to proceed against the stockholder after the comptroller has found it "necessary to pay the debts of such association"; and without this ascertainment on the part of the comptroller, and his direction to the receiver to proceed, there is no cause of action against the stockholder. On the declared insolvency of the bank, and the appointment of the receiver, no demand could be made upon the stockholder by the receiver; and the stockholder could not, if he so desired, go to the receiver and make a tender of his assumed liability, for the receiver would not be authorized to receive it, as he would not know how much would be necessary to be paid. In other words, upon the declared insolvency of the bank, and the appointment of a receiver therefor, the stockholder knows that his liability is contingent upon the insufficiency of the assets of the bank, and the declared ascertainment of that fact by the comptroller, and he knows that he is not required to pay until called upon; and I am therefore unable to distinguish, in principle, this case from those ruled upon by the supreme court. As no demand was made upon the defendants until April, 1895, and February, 1899, the five years had not run. This defense, therefore, would not avail, if the statute hinged alone upon the statute of limitations. On the second ground of defense the ruling is in favor of the defendants, and the motion for judgment on the answer is therefore denied.